UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

Jeffrey Cohen,

                          Plaintiff,

                -against-

United States of America et al.,

                        Defendants.

-------------------------------------------------------------------X

23-cv-08099-NSR-VR

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

Currently before the Court is a motion by Plaintiff Jeffrey Cohen under Rule 15(d) to supplement his second amended complaint (ECF No. 49). For the reasons below, the motion is **DENIED without prejudice**.

## BACKGROUND

Plaintiff commenced this action in September 2023 while incarcerated at FCI Otisville in Otisville, New York. (ECF No. 1 at 1).[1] His claims centered around his time incarcerated at FCI Otisville in New York and FCI Gilmer in West Virginia. (*Id.*). He named several prison officials and the United States as defendants, alleging that his mail was improperly handled and that he was denied medical care for sleep apnea and an injury to his back, among other things. (*Id.* at 2–10). In November 2023, Plaintiff was granted leave to amend his complaint (ECF No. 7), which he did shortly thereafter in January 2024. (ECF No. 8).

---

[1] All page numbers for documents filed on ECF refer to ECF pagination.

The amended complaint asserted three claims of "ordinary negligence" against the United States, and alleged that the Government denied and delayed him medical care for his sleep apnea, back injuries, and weight loss prescriptions while he was incarcerated at FCI Otisville. (ECF No. 8 at 4–6).[2] Approximately six months later, Plaintiff sought leave to amend his complaint for a second time (ECF No. 44), which was granted. (ECF No. 48). In his second amended complaint, Plaintiff reasserted the three negligence claims against the Government contained in the amended complaint and asserted four additional claims: (1) ordinary negligence against Defendant Seven Corners, Inc. for delaying medical care for his sleep apnea and back injury, (2) ordinary negligence against the Government for failing to monitor Seven Corners' provision of medical services, (3) civil conspiracy against the Government and Seven Corners for conspiring to diminish the care provided to him, and (4) "unlawful agency action" against the Government for violating regulations and protocols regarding placing prisoners in handcuffs that injured his hands and wrists. (ECF No. 49 at 2–4).[3] All four of the new claims occurred while Plaintiff was incarcerated at FCI Otisville. (*Id.*).

After the Government moved to dismiss the second amended complaint as against it (ECF No. 69), Plaintiff agreed to voluntarily withdraw several of his claims and Judge Román granted the Government's motion to that extent. (ECF No.

---

[2] These are labeled Claim Nos. 1, 2, and 3, respectively. (ECF No. 8 at 4–6).

[3] These are labeled Claim Nos. 4, 5, 6, and 7, respectively. (ECF No. 49 at 1–3).

91 at 1). The remaining claims were claim numbers one, two, and five against the Government, and claim numbers four and six against Seven Corners. (*Id.*).

Plaintiff now seeks to supplement his second amended complaint to add three new defendants and six new claims, all of which allegedly arose after he filed his second amended complaint—the operative complaint. (ECF No. 103).[4] The three defendants are John Doe, an employee at FCI Otisville; Darek Puzio, an assistant warden at FCI Danbury; and "C. Flowers," the warden at FCI Danbury. (ECF No. 104 at 1).[5] The new claims are identified as Claim Nos. 8, 9, 10, 11, 12, and 13, to supplement the seven claims contained in the operative pleading. (*Id.* at 10–12).

Claim Nos. 8, 9, 10, and 12 assert claims of "ordinary negligence," trespass/conversion, "recklessness," and prima facie tort against Doe and Puzio, alleging that Doe failed to properly transport Plaintiff's legal materials and that both individuals intentionally disposed of those materials. (*Id.* at 10–12). Claim Nos. 11, 12, and 13 assert claims of "ordinary negligence" and prima facie tort against the Government, alleging that it denied and delayed his medical care by

---

[4] Plaintiff's motion is properly characterized as a motion to supplement under Rule 15(d) because the events described in the supplemental pleading occurred after the filing of his original complaint. *See* Fed. R. Civ. P. 15(d) ("[T]he court may . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."); *see also Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019) ("Rule 15(d) allows a party to supplement its complaint in order to present facts and claims that arose after the operative complaint was filed.").

[5] Flowers is not mentioned explicitly in the supplemental pleading outside the caption. (ECF No. 104 at 1). The supplemental pleading contains no factual allegations that Flowers was involved in any way with Plaintiff's medical care or the disposal of his legal materials. Even construing the supplemental pleading in the light most favorable to Plaintiff, there is no way to read it to assert a cause of action against Flowers. Further, even if Flowers is a named defendant, any claims against him would be analyzed the same way as Plaintiff's supplemental claims against Doe and Puzio. Thus, the only individual defendants who will be addressed by the Court are Doe and Puzio.

transferring him from FCI Otisville to FCI Danbury in retaliation for filing this action and that it disposed of his legal materials, which prejudiced his ability to prosecute this action and other federal actions.

The Government opposes the motion (ECF No. 112), and Plaintiff replied (ECF No. 123). In his reply papers, Plaintiff withdrew Claim Nos. 11 and 12 as against the United States, but stated he was not withdrawing Claim No. 12 as against Doe and Puzio. (ECF No. 123 at 5). Thus, the Court will only address Claim Nos. 8, 9, 10, and 12 against Doe and Puzio, and Claim No. 13 against the Government.

## DISCUSSION

### I.    Whether Plaintiff's Supplemental Claims are Sufficiently Connected to His Operative Claims

Plaintiff contends that he should be granted leave to supplement his operative pleading under Rule 15(d) because his supplemental claims are sufficiently related to his operative ones. (ECF No. 103 at 2). Plaintiff alleges that since filing the operative complaint, he was transferred to another facility in retaliation for filing this case. (ECF No. 104 at 2). And in the process of that transfer, his legal materials were intentionally lost or destroyed. (*Id.* at 2–3). Plaintiff also asserts that the alleged destruction of his legal materials has obstructed his ability to pursue his initial claims here, and in other cases. (*Id.*). He also contends that supplementing his pleadings was done soon after the legal materials were destroyed, was not done in bad faith, and does not unduly delay any proceedings. (*Id.*).

The Government argues in opposition that his supplemental claims are not sufficiently related to his operative ones. (ECF No. 112 at 11–12). It argues that too much time has elapsed between the filing of the initial complaint and this supplemental pleading, and that the supplemental claims add new individuals and correctional facilities unrelated to his initial claims. (*Id.*). The Government also argues that Plaintiff's allegations that the conduct occurred in retaliation for filing this action are conclusory and thus do not relate back to his initial claims. (*Id.*).

In reply, Plaintiff maintains that his supplemental claims are related to his operative ones because the loss of his legal materials "has foreclosed the opportunity" for him to successfully pursue his operative claims. (ECF No. 123 at 1–2). He also maintains that allowing him leave to supplement is a more efficient option than forcing him to commence a separate action. (*Id.* at 4).

A district court has "broad discretion" in determining whether to grant leave to supplement pleadings under Rule 15(d). *Perry v. Monaco*, 24-cv-8736 (LJL), 2025 WL 2256888, at *2 (S.D.N.Y. Aug. 7, 2025) (internal quotation marks and citation omitted). In making that determination, the threshold consideration is "whether the supplemental facts connect the supplemental pleading to the original pleading." *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 88 (2d Cir. 2001) (internal quotation marks, brackets, and citation omitted).

A sufficient connection occurs when the supplemental allegations "are closely related" to those asserted in the litigation already and "involve the same subject matter." *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008); *see also*

*Girard v. Collao*, No. 18-CV-2026 (NSR), 2022 WL 409098, at *3 (S.D.N.Y. Feb. 9, 2022) (stating Rule 15(d) motion should be denied "[w]hen there is no nexus between the events alleged in the original complaint and those alleged in the proposed supplemental complaint, or if the new events did not arise out of the same conduct or occurrence as those in the original pleading" (internal quotation marks, brackets, and citation omitted)); *Perry*, 2025 WL 2256888, at *2 (stating denial required when "the claim or defense asserted in the supplemental pleading bears little or no relationship to the original pleading" (internal quotation marks, brackets, and citation omitted)).

Here, there is a sufficient connection between the supplemental claims and the operative ones. As noted above, Plaintiff's operative claims relate to his allegations that the Government and Seven Corners denied or delayed his necessary medical care at FCI Otisville. (ECF No. 8 at 1–5; 49 at 1–2). His supplemental claims allege that the Government transferred him from FCI Otisville to FCI Danbury in retaliation for filing this action. (ECF No. 104 at 2–3). And in the process of that transfer, Plaintiff alleges that the Government, along with Doe and Puzio, improperly disposed of his legal materials, which prejudiced his ability to prosecute this action and others. (*Id.* at 2–8). Plaintiff's supplemental claims are closely related to his operative ones because they center on the conditions of his incarceration and his pending litigation regarding those conditions. Being able to maintain possession of his personal property—here, his legal materials—is closely

related to whether he can satisfy his burden of proof regarding his alleged denial of medical care.

A central purpose underlying Rule 15(d) is that supplementation serves to "add information about events that have occurred subsequent to the date of the original complaint," which Plaintiff's supplemental claims achieve. *Bemben v. Fuji Photo Film U.S.A., Inc.*, No. 01Civ.8616(KMW)(DF), 2003 WL 21146709, at *1 (S.D.N.Y. May 19, 2003). And it would serve no purpose to deny Plaintiff leave to supplement, force him to commence a separate federal action asserting these supplemental claims, and move to consolidate that action with the instant one. *See Corum v. Beth Isr. Med. Ctr.*, 359 F. Supp. 909, 914 (S.D.N.Y. 1973). Allowing Plaintiff to supplement his pleading permits the entire controversy to be litigated on the merits as one singular unit. (*Id.*). Thus, Plaintiff has satisfied the first requirement for obtaining leave to supplement pleadings. *See Witkowich*, 541 F. Supp. 2d at 590 (granting leave to supplement because of close relationship and shared subject matter between new allegations and operative allegations raised in complaint).

## II.    Whether Plaintiff's Supplemental Claims are Futile

Despite the sufficient connection between Plaintiff's supplemental claims and his operative ones and the principle that leave should be freely granted, denial of leave is appropriate if there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility."

*Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).[6] Supplemental claims are futile when they would fail to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *See Nat'l Credit Union Admin. Bd. v. HSBC Bank US, Nat'l Ass'n*, 331 F.R.D. 63, 70, 73 (S.D.N.Y. 2019) (granting leave to supplement because new claims sufficiently stated causes of action regarding real party in interest).

The Government does not argue that Plaintiff operated in bad faith, engaged in dilatory tactics, created undue prejudice, or caused undue delay by seeking to supplement his pleading, nor is there any indication that Plaintiff has done so. It only contends that Plaintiff should be denied leave because his supplemental claims are futile. (ECF No. 112 at 12). More specifically, it contends that his claims are *Bivens* and FTCA claims that would not survive a motion to dismiss because (1) he failed to first exhaust his administrative remedies, and (2) he fails to state a cognizable claim. (*Id.* at 12–20).

Plaintiff maintains in reply that his claims are not futile because he is alleging that these individuals committed common-law torts in their individual capacities, so the requirements for *Bivens* and FTCA claims do not apply. (ECF No. 123 at 4–5).

The Court first addresses Plaintiff's supplemental claims against Doe and Puzio (in Claim Nos. 8, 9, 10, and 12), both as common-law tort claims and as

---

[6] This standard is identical to the standard applied to motions for leave to amend under Rule 15(a). *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (explaining discretionary standard for granting leave under Rule 15(a)); *CFPB v. MoneyGram Int'l, Inc.*, 22 Civ. 3256 (KPF), 2025 WL 297389, at *5 (S.D.N.Y. Jan. 24, 2025) (reiterating same standard applies to Rule 15(a) and 15(d) motions).

possible *Bivens* claims. The Court then addresses Plaintiff's supplemental FTCA claim against the Government (in Claim No. 13).

### A. Plaintiff's common-law tort claims against Doe and Puzio (in Claim Nos. 8, 9, 10 and 12)

Plaintiff insists that Claim Nos. 8, 9, 10, and 12 are common-law tort claims against Doe and Puzio in their individual capacities. (ECF No. 123 at 4–5). And, as a result, Plaintiff asserts that his supplemental claims are not governed by the Federal Tort Claims Act (FTCA), as would be his tort claims against the Government. (ECF No. 123 at 1–2, 4). But the FTCA provides government employees with absolute immunity against common-law tort claims when the employee is acting within the scope of their employment. *See Rivera v. United States*, 928 F.2d 592, 608 (2d Cir. 1991) (affirming dismissal of common-law tort claims against individual defendants on ground that FTCA gave federal law enforcement agents absolute immunity from suit for damages when acting within scope of their employment); *Lipkin v. SEC*, 468 F. Supp. 2d 614, 616–17 (S.D.N.Y. 2006) (finding FTCA barred common-law tort claims against federal employees in their individual capacity when acting within scope of their employment); 28 U.S.C. § 2679(b)(1) (providing that suit against the United States is exclusive remedy for damages for injury or loss of property "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment").

To try to avoid this outcome, Plaintiff alleges in the supplemental pleading and his motion papers that Doe and Puzio were acting outside the scope of their

employment. (ECF No. 123 at 4–5). Although the Court is required to accept all factual allegations in the supplemental pleading as true and construe any inferences in the light most favorable to Plaintiff, no effect is given to "assertions of law or to legal conclusions couched as factual allegations." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (internal quotation marks and citations omitted), *cert. denied* 568 U.S. 1087 (2013). Plaintiff's allegation that Doe and Puzio acted outside the scope of their employment is just such "a legal conclusion masquerading as a factual conclusion, which the Court need not accept as true" at this stage. *Dawson v. Beebe*, 24 Civ. 1548 (KPF), 2025 WL 2402289, at *10 (S.D.N.Y. Aug. 19, 2025) (internal quotation marks, brackets, and citation omitted) (concluding as a matter of law that defendant state correctional officers were not acting within scope of employment when they engaged in misconduct); *see Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 452 n.6 (S.D.N.Y. 2017) (finding plaintiff's assertion that coworker was acting within scope of employment amounted to legal conclusion). Thus, the Court cannot and does not construe Plaintiff's allegation that Doe and Puzio were acting outside the scope of their employment to mean that they were, in fact, doing so. *See Dawson*, 2025 WL 2402289, at *10.

Instead, whether conduct falls within the scope of employment under the FTCA is a legal question governed by "the respondeat superior law of the jurisdiction where the tort occurred." *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016). Here, Doe's conduct occurred at FCI Otisville in New York and Puzio's conduct occurred at FCI Danbury in Connecticut. (ECF No. 104 at 3–7).

Under New York law, an employee's act falls within the scope of their employment when it was "done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) (internal quotation marks and citations omitted); *accord Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (quoting *Riviello*, 391 N.E.2d at 1281).[7] Connecticut has a similar test: An employee is within the scope of employment "while engaged in the service of the master," and an act is outside the scope when an employee "engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business." *A–G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 74 (Conn. 1990) (internal quotation marks and citations omitted); *see Aldridge v. Hartford Hosp.*, 969 F. Supp. 816, 819 (D. Conn. 1996) (citing *A–G Foods, Inc.*, 579 A.2d at 71).

Applying the relevant state law test to Doe's and Puzio's alleged conduct yields the same result—their alleged conduct falls within the scope of their employment. Handling a prisoner's personal possessions is plainly within the normal and expected duties of BOP officials, as shown by the host of federal regulations governing that conduct. *See, e.g.*, 28 CFR §§ 553.10–.15 (regulations governing "Inmate Personal Property"). Plaintiff even points to as much in his motion papers, highlighting various federal regulations and internal BOP policies

---

[7] New York law also provides five factors that are relevant to this determination: "the connection between the time, place[,] and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Riviello*, 391 N.E.2d at 1281; *see Fountain*, 838 F.3d at 138 (quoting *Riviello*, 391 N.E.2d. at 1281).

related to handling inmate property to support his supplemental claims. (ECF No. 104 at 2–3; 123 at 6–8). Whether Doe and Puzio acted wrongfully in *how* they handled Plaintiff's personal property does not remove their conduct from within the scope of their employment. *See Rivera*, 928 F.2d at 608–09 (holding law enforcement officers were within scope of employment when executing warrants, despite allegations that they acted wrongfully in doing so). As the Second Circuit explained in *Rivera*, "the question of whether the act was wrongful is a different one from whether the act occurred while the employee was acting within the scope of his employment." *Id.* at 608.

Even reading the factual allegations of the supplemental pleading in the light most favorable to Plaintiff, Doe and Puzio were acting within the scope of their employment. As Plaintiff alleges in his supplemental pleading, "staff at FCI Otisville were required [by BOP policy] to pack and ship" all his personal property to FCI Danbury when he was transferred, and he communicated with staff at FCI Danbury about where they would store his legal materials. (ECF No. 104 at 2–4). Handling Plaintiff's personal property was thus part of Doe's and Puzio's job responsibilities as staff at FCI Otisville and FCI Danbury. That Doe and Puzio allegedly mishandled Plaintiff's legal materials does not make their actions outside the scope of their employment. *See Rivera,* 928 F.2d at 608–09 (finding that execution of search warrants, even if allegedly done wrongfully, was still within scope of employment); *cf. Ierardi v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) (finding prison official allegedly engaging in sexual harassment "during the course of his

employment" was outside the scope because it "was not undertaken in the discharge of his duties").

Because Doe and Puzio were acting within the scope of their employment, they are immune from suit by the FTCA. *See Rivera*, 928 F.2d at 608. Thus, it would be futile for Plaintiff to supplement his operative complaint to include the common-law tort claims in Claim Nos. 8, 9, 10, and 12 against Doe and Puzio in their individual capacities, because they would not survive a motion to dismiss. *See Scott v. Harbeck*, 22-CV-241 (JPO), 2023 WL 1382050, at *3 (S.D.N.Y. Jan. 31, 2023) (denying leave to supplement because supplementation would be futile).[8]

## B. **Plaintiff's *Bivens* claims against Doe and Puzio (in Claim Nos. 8, 9, 10, and 12)**

Because Plaintiff is a pro se litigant, the Court must construe the claims in Plaintiff's supplemental pleading "liberally to raise the strongest arguments it suggests." *Darby v. Greenman*, 14 F. 4th 124, 127–28 (2d Cir. 2021) (internal quotation marks and citation omitted). Although the FTCA renders federal employees immune from causes of action for common-law torts, a cause of action for certain constitutional torts is allowed under the line of precedent established by the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Egbert v. Boule*, 596 U.S. 482, 490–91 (2022) (discussing three types of constitutional torts recognized by Supreme Court precedent after initial decision in *Bivens*). The Second Circuit has recognized that

---

[8] But Plaintiff is not left without a remedy for these alleged injuries. He could substitute the United States as the proper defendant instead of Doe and Puzio. But such FTCA claims would be subject to exhaustion requirements, which Plaintiff has failed to meet at this time. *See infra* Section II.C.

"intentional deprivations of property without due process of law" are an additional

constitutional tort that can support a cause of action under *Bivens*. *See Polanco v.

DEA*, 158 F.3d 647, 650 (2d Cir. 1998). But that *Bivens* remedy has been limited to

"only" *intentional* deprivations of property; *negligent* deprivations are not sufficient.

*Id.*; *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011)

(granting summary dismissal of plaintiff's *Bivens* claim against BOP employee after

concluding that negligent deprivations of property cannot support remedy under

*Bivens* and there was insufficient evidence "that his property was intentionally

destroyed rather than simply lost").[9]

In Claim Nos. 9 and 12, Plaintiff alleges that Doe and Puzio "intentionally

dispossessed" him and intentionally harmed him by disposing of his legal materials.

(ECF No. 104 at 11–12). Reading those claims in the light most favorable to

Plaintiff, they could be read to assert *Bivens* claims. Claim Nos. 8 and 10 also allege

that Doe and Puzio deprived Plaintiff of his property, but Plaintiff alleges they did

---

[9] As the Second Circuit reiterated in *Adekoya v. BOP*, 381 F. App'x 35 (2d Cir. 2010) (summary order)*,* "a negligent deprivation [of property without due process of law] is insufficient and not actionable" as a *Bivens* claim. *Id.* at 37 (dismissing plaintiff's *Bivens* claims against BOP employees because his alleged property deprivation "arose out of negligence" (internal quotation marks and citation omitted)). Summary orders issued by the Second Circuit are not binding authority and do not provide Circuit precedent. *See* 2d Cir. R. 32.1.1 (precedential effect of summary orders) ("Rulings by summary order do not have precedential effect."); *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 702 n.4 (2d Cir. 2009) (stating summary orders "do not provide binding authority"). But they do provide persuasive authority that this Court may rely on in deciding the instant motion. *See Delo v. Fordham Univ.*, 24-CV-6025 (JGLC) (VF), 2025 WL 2166087, at *10 (S.D.N.Y. June 2, 2025) ("While summary orders are not binding, they are nonetheless persuasive authority in this Circuit." (citation omitted)); *Liana Carter Ltd. v. Pure Biofuels Corp.*, 14-cv-3406 (VM), 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015) (explaining that summary orders "can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive").

so negligently and recklessly. (ECF No. 104 at 10–11).[10] Thus, even reading these two claims in the light most favorable to Plaintiff, allowing him to supplement his operative pleading with Claim Nos. 8 and 10 would be futile because those claims would not survive a motion to dismiss. *See Roseboro*, 791 F. Supp.2d at 380.

In arguing the futility of Plaintiff's *Bivens* claims, the Government first argues that Plaintiff failed to exhaust them because he failed to comply with the Bureau of Prisons' (BOP) four-step process for exhausting administrative remedies. (ECF No. 112 at 12–14). The Government further argues that the supplemental pleading is "devoid of any allegations establishing exhaustion." (*Id.* at 14). In reply, Plaintiff maintains that his claims are not *Bivens* claims and need not be exhausted. (ECF No. 123 at 1, 4–5).

The Prison Litigation Reform Act provides that a prisoner cannot commence an action in federal court regarding their prison conditions until all administrative remedies have been exhausted. *See* 42 U.S.C. § 1997e(a). That exhaustion requirement "applies to 'all inmate suits about prison life,'" including actions, like this one, where a plaintiff seeks monetary damages. *See Wood v. Byrd*, No. 16-CV-8142 (KMK), 2020 WL 550787, at *4 (S.D.N.Y. Feb. 4, 2020) (quoting *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002)). A litigant is not required to plead exhaustion to survive dismissal, but the failure to exhaust is an affirmative defense that can be

---

[10] Plaintiff reiterates in his reply papers that his claims against Doe and Puzio are not *Bivens* claims. (ECF No. 123 at 1, 4–5). But the Court nevertheless analyzes these claims as *Bivens* claims, given the Court's duty to construe Plaintiff's claims to raise the strongest arguments that they suggest.

considered in a pre-answer dismissal context. *See Wood*, 2020 WL 550787, at *4

(citing *Jones v. Bock*, 549 U.S. 199 (2007)).

Dismissal for failure to exhaust is appropriate where the failure "is clear on

the face of the complaint," meaning it can be determined from the contents of the

pleading alone that the plaintiff "file[d] his action before the timeline for

administrative remedies ha[d] elapsed." *McCray v. Carter*, 21 Civ. 9051 (PAE)

(GWG), 2022 WL 6854524, at *3 (S.D.N.Y. Oct. 12, 2022) (internal quotation marks

and citations omitted). And, contrary to the Government's contention, a pleading

"may lack specifics as to how the plaintiff grieved his claim, but that is not a valid

basis for dismissal." *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10

Civ. 6309(JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011). If a defendant

satisfies its initial burden to demonstrate a failure to exhaust, the burden shifts to

the plaintiff to demonstrate that an exception to the exhaustion requirement

applies. *Wood*, 2020 WL 550787, at *6.

Despite the strict emphasis on exhaustion, the PLRA contains a "'textual

exception to mandatory exhaustion.'" *Id.* at *5 (quoting *Ross v. Blake*, 578 U.S. 632,

642 (2016)). That exception is grounded in the availability of administrative

remedies—an inmate "must exhaust available remedies, but need not exhaust

unavailable ones." *Ross*, 578 U.S. at 642. A remedy is available when it can obtain

some sort of relief for the injury the inmate complained about. *See id.* (holding

available meant "grievance procedures that are capable of use to obtain some relief

for the action complained of" (internal quotation marks and citation omitted)). And

the form of relief is irrelevant to whether a remedy is available. *See Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001) (holding inmates must exhaust available administrative remedies "regardless of the relief offered through administrative procedures").

There are three recognized circumstances where a remedy is considered unavailable for purposes of the PLRA: "(1) the grievance process operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the process is so opaque that it becomes, practically speaking, incapable of use; or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Rucker v. Giffen*, 997 F.3d 88, 93 (2d Cir. 2021) (internal quotation marks and citation omitted).[11]

Plaintiff's supplemental pleading does not identify the relevant administrative grievance procedures, but the Government points to the "Administrative Remedy Program" promulgated in 28 C.F.R. § 542 *et seq*. The Program "applies to all inmates in institutions operated by the [BOP]" and allows them "to seek formal review of an issue relating to any aspect of [their] own confinement." BOP Administrative Remedy Rules, 28 C.F.R. § 542.10(a)–(b). This agency regulation is something the Court can consider through judicial notice. *See*

---

[11] The Second Circuit has stated that these three circumstances are not exhaustive, but it is unclear whether any other circumstances beyond these three have been identified by courts in this Circuit. *See Rucker*, 997 F.3d 88, 93 (2d Cir. 2021) ("[In *Williams v. Corr. Officer Priatno*, 829 F.3d 118 (2d Cir. 2016),] we declined to identify other circumstances that might render a technically available administrative remedy effectively unavailable.").

*Williams v. NYC Health and Hosps. Corp.*, 24-cv-5467 (LJL), 2025 WL 1334667, at

*2 n.2 (S.D.N.Y. May 7, 2025) ("Courts may take judicial notice of agency rules and

regulations."). The Court thus takes judicial notice of the applicable grievance

procedures contained in 28 C.F.R. Chapter V, Subchapter C, Part 542.

The Administrative Remedy Program (ARP) has four steps an inmate must

follow to resolve their grievance. The first step is an informal request to staff to

resolve the issue, which must follow whatever procedure is established by the

Warden of the facility where Plaintiff is incarcerated. 28 C.F.R. § 542.13. Second, if

the informal request does not resolve the issue, the inmate must make a formal

written request to the Warden within 20 days of the date the issue began. 28 C.F.R.

§ 542.14(a). [12] Third, if the formal request is denied, the inmate may appeal the

Warden's decision to the Regional Director within 20 days of the Warden's response,

who is required to respond to the appeal within 30 days. 28 C.F.R. §§ 542.15,

542.18. And finally, an inmate may appeal the Regional Director's decision to the

General Counsel within 30 days of the Regional Director's response, who is required

to respond to the appeal within 40 days. 28 C.F.R. §§ 542.15, 542.18. An appeal to

the General Counsel "is the final administrative appeal" available to the prisoner,

28 C.F.R. § 542.15, and an inmate "may file an action in federal court only after

these four steps have been completed." *Indelicato v. Suarez*, 207 F. Supp. 2d 216,

219 (S.D.N.Y. 2002).

---

[12] The Warden is required to respond within 20 days of receiving the written request. 28 C.F.R.
§ 542.18.

The allegations in Plaintiff's supplemental pleading occurred between April 23, 2025 (the date he was transferred to FCI Danbury), and May 20, 2025 (when Puzio allegedly disposed of Plaintiff's legal materials). Plaintiff moved for leave to supplement his operative pleading on June 16, 2025, just 54 days after his earliest incident. His supplemental pleading mentions speaking to his counselor, an AUSA, a BOP "legal representative," and Puzio himself about his legal materials but is otherwise silent about filing any formal grievances. (ECF No. 104 at 4–5). But given the lengthy timelines of the ARP and its multi-level grievance process, it would have been virtually "impossible" for Plaintiff to exhaust all steps of the procedure between the alleged incident and the filing of his supplemental pleading. *See Price v. City of New York*, No. 11 Civ. 6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012). Thus, it is clear from the face of his supplemental pleading that Plaintiff failed to exhaust the administrative remedies available to him. *See id.* (finding plaintiff failed to exhaust claims because it was impossible for him to complete state prison grievance procedure in 21-day period between date of incident and filing complaint); *McCray*, 2022 WL 6854524, at *3 (finding plaintiff failed to exhaust claims because it was "virtually impossible" to complete multi-level grievance process in five-day period between incident and filing complaint); *Caraballo v. Dep't of Corr. City of N.Y.*, 22-cv-00971 (JLR), 2022 WL 16555313, at *3 (S.D.N.Y. Oct. 31, 2022) (similar).

Nor is there any indication that any administrative remedies were not available to Plaintiff. Nothing suggests that the ARP constitutes a dead end, is too

confusing for Plaintiff to navigate, or that any administrators thwarted Plaintiff's attempt to pursue that avenue. Thus, Plaintiff's *Bivens* claims would not survive a motion to dismiss because of his failure to exhaust his administrative remedies, which warrants denial of his motion to add these claims through supplementation. *See Scott*, 2023 WL 1382050, at *3.

Because the Court finds that Plaintiff's *Bivens* claims are futile due to a failure to exhaust, the Court declines to address the merits of whether Plaintiff's *Bivens* claims otherwise fail to state a claim.

### C. <u>Plaintiff's FTCA Claim against the Government (Claim No. 13)</u>

Plaintiff also seeks to add Claim No. 13 against the Government for "ordinary negligence" based on the improper disposal of his legal materials. (ECF No. 104 at 12). Because Plaintiff's claim is a common-law tort claim against the United States, it is governed by the FTCA. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) (explaining FTCA's statutory background and waiver of sovereign immunity for specific tort claims against the Government).

The Government argues that Plaintiff failed to exhaust his FTCA claims because he failed to submit "an SF-95 or other written notification of the incident and the claim amount within two years from the date the claim accrue[d]." (ECF No. 112 at 18–19). It also argues that the supplemental pleading lacks any information establishing that he exhausted these claims. (*Id.*).

In reply, Plaintiff maintains that he "submitted the required claim to the BOP," which allegedly acknowledged receipt and has several months left to resolve his administrative claim. (ECF No. 123 at 5).[13]

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82. To exhaust those administrative remedies, a plaintiff must file a claim for damages with the appropriate federal agency and receive a final written determination. *See* 28 U.S.C. § 2675(a); *Roberts v. Amtrack R.R. Co.*, 23-CV-8093 (LTS), 2023 WL 6882226, at *3 (S.D.N.Y. Oct. 16, 2023). That administrative claim "must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual." *Roberts*, 2023 WL 6882226, at *3. Once the federal agency provides a final denial of the administrative claim, or no final determination is made within six months of the claim's initial submission, a plaintiff can commence an action in federal court. *Id.* A plaintiff alleging FTCA claims bears the burden "to both plead and prove compliance with the [FTCA's] requirements." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987), *cert. denied* 484 U.S. 1004 (1988). And "[t]his

---

[13] Plaintiff appears to concede that his FTCA claim is unexhausted, because he acknowledges in his reply papers that the Government still has "an additional three months to determine whether to settle or deny" an administrative claim he submitted previously regarding this purported property loss. (ECF No. 123 at 5). But this apparent concession is irrelevant to the analysis of whether he satisfied the exhaustion requirements because the analysis focuses on the four corners of the supplemental pleading to see if he sufficiently plead exhaustion. *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987) (finding lack of subject matter jurisdiction because complaint failed to allege procedural exhaustion of FTCA claim).

procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

Even giving Plaintiff's supplemental pleading the most liberal construction, he "wholly fails to plead the filing of an administrative claim" with any agency. [14] *Bright-Asante v. Wagner*, 15-CV-9110 (ALC), 2017 WL 6948359, at *9 (S.D.N.Y. Dec. 1, 2017) (dismissing plaintiff's FTCA claims for failure to exhaust after pleading failed to allege filing of administrative claim with Secret Service). His supplemental pleading "alleges no facts to show that a sufficient administrative claim was filed with an appropriate federal agency as required under the FTCA." *Cannenier v. Skipper-Scott*, 18 Civ. 2383 (LGS), 2019 WL 764795, at *4 (S.D.N.Y. Feb. 20, 2019) (dismissing FTCA claims for lack of exhaustion); *Page v. Oath Inc.*, 17 Civ. 6990 (LGS), 2018 WL 1406622, at *4 (similar where pleading was "devoid of any facts suggesting that Plaintiff filed an administrative claim with an appropriate federal agency"), *aff'd* 797 F. App'x 550 (2d Cir. 2019). Plaintiff would fail to survive a motion to dismiss because this Court would lack subject matter jurisdiction over Claim No. 13. *See Roberts*, 2023 WL 6882226, at *4. [15] Thus, this failure to exhaust

---

[14] As mentioned above, despite Plaintiff's mention of a pending administrative claim about the loss of his personal property, the four corners of his supplemental pleading contain no mention of it. Even if this Court were to consider Plaintiff's statements outside his supplemental pleading, it would only serve to highlight his failure to exhaust because he concedes that the Government has time to render a determination on that claim.

[15] But any dismissal would be without prejudice, and Plaintiff would have the opportunity to replead his FTCA claims once he properly exhausted them. *See Bettis v. United States*, 346 F.R.D. 34, 41 (S.D.N.Y. 2024) (dismissing FTCA claims without prejudice for lack of subject matter jurisdiction based on failure to exhaust); *Manchanda v. Lewis*, 20 Civ. 1773 (GBD) (RWL), 2021 WL 1192083, at *4 (S.D.N.Y. Mar. 30, 2021) (similar).

renders Claim No. 13 futile, which warrants denial of Plaintiff's motion to add this claim through supplementation. *See Scott*, 2023 WL 1382050, at *3.

The Court declines to address the merits of Claim No. 13 because it would lack subject matter jurisdiction over that claim due to Plaintiff's failure to exhaust. *See Ojo v. United States*, 20-CV-4882 (MKB), 2022 WL 4091011, at *5 n.7 (E.D.N.Y. Sept. 6, 2022); *Gabrielli v. Insider, Inc.*, 24-cv-01566 (ER), 2025 WL 522515, at *9 (S.D.N.Y. Feb. 18, 2025).

## **CONCLUSION**

For the reasons above, Plaintiff's motion for leave to supplement his operative pleading (ECF No. 103) is DENIED without prejudice. The Clerk of Court is directed to close the gavel associated with ECF No. 103.

**SO ORDERED.**

DATED:    White Plains, New York
          September 9, 2025

VICTORIA REZNIK
United States Magistrate Judge