USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY COHEN,

Plaintiff,

-against-

UNITED STATES OF AMERICA ET AL.,

Defendants.

7:23-CV-8099-NSR

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jeffrey Cohen ("Plaintiff"), proceeding *pro se*, commenced this 42 U.S.C. § 1983 action while housed at Federal Correctional Institution, Otisville ("FCI Otisville") against Defendants through a Complaint filed on September 12, 2023 alleging, *inter alia*, denial and delay of medical care at FCI Otisville and Federal Correctional Institution, Gilmer ("FCI Gilmer"). (Complaint, ECF No. 1.) Since April 2025, Plaintiff has been housed at Federal Correctional Institution, Danbury ("FCI Danbury").

Before the Court is Plaintiff's motion for a preliminary injunction (the "Motion"), filed on December 17, 2025, seeking this Court to order "the medical staff at FCI Danbury" to: (1) schedule surgery for a back injury; (2) provide certain follow-up care for his sleep apnea; (3) provide orthotic insole replacements for his foot pain; (4) provide cortisone injections for his lateral epicondylitis (tennis elbow); and (5) prescribe Ozempic to treat his obesity. (Pl. Mot. at 8, ECF No. 151.)

For the reasons that follow, Plaintiff's Motion is DENIED.

## FACTUAL BACKGROUND

On December 10, 2015, Petitioner was sentenced to a term of imprisonment of 444 months and a three-year term of supervised release after pleading guilty to wire fraud, aggravated identity

theft, making false statements to a regulator and obstruction of justice. Following his sentencing, Plaintiff was incarcerated at Federal Correctional Institution, Hazelton. (Gov't Opp. at 6.) In 2019, he was transferred to FCI Gilmer, and in December 2022, he was transferred to FCI Otisville. *Id.* In April 2025, Plaintiff was transferred to FCI Danbury, where he has been incarcerated since. (Decl. of Angela Dukate ("Dukate Decl."), ¶ 5, ECF No. 166.)

Petitioner filed the instant Motion on December 17, 2025, while housed at FCI Danbury, asking the Court to direct "the medical staff at FCI Danbury" to: (1) schedule surgery for a back injury; (2) provide certain follow-up care for his sleep apnea; (3) provide orthotic insole replacements for his foot pain; (4) provide cortisone injections for his lateral epicondylitis (tennis elbow); and (5) prescribe Ozempic to treat his obesity. (Pl. Mot. at 8.)

According to the Declaration of Angela Dukate, a licensed nurse currently stationed at FCI Danbury, Plaintiff is currently receiving treatment, and has been receiving treatment for many months, for all of his ailments. (Dukate Decl., ¶¶ 7-12.) Specifically, regarding Plaintiff's back pain, on May 22, 2025, Plaintiff had a consultation with an outside orthopedic surgeon, who recommended an orthopedic spine consultation which the Bureau of Prisons ("BOP") is in the process of scheduling. (*Id.* ¶ 7.) With respect to Plaintiff's alleged sleep apnea, Ms. Dukate declared that Plaintiff was provided with a C-Pap machine while at FCI Otisville but has not requested one or complained of symptoms since his transfer to FCI Danbury. (*Id.* ¶ 8.) With respect to Plaintiff's alleged elbow pain, of which he first complained about on May 22, 2025 to the orthopedic surgeon, Plaintiff was prescribed and is taking pain medication. (*Id.* ¶ 9.) With respect to Plaintiff's request for Ozempic to treat his obesity, Ms. Dukate declared that Plaintiff has not requested Ozempic since arriving FCI Danbury and that, as a general matter, BOP does not recommend Ozempic as a treatment for obesity unless the incarcerated individual has attempted

to change their diet and exercise with no progress for at least six months. (*Id.* ¶ 10.) Plaintiff is diabetic and is currently prescribed medication for it. (*Id.*) Lastly, with respect to orthotic insoles, Ms. Dukate declared that FCI Danbury runs a weekly program whereby inmates can exchange their old insoles for new ones. (*Id.* ¶ 11.)

Plaintiff disputes Ms. Dukate's declaration as factually inaccurate and lacking evidentiary support. (*See generally* Pl. Reply at 3.) Plaintiff argues that: (1) Ms. Dukate does not address the specific relief he is requesting for his sleep apnea, which is follow-up care prescribed by the physician who performed his sleep apnea study; (2) Ms. Dukate conflates custom-made medical prescribed leather orthotic devices with generic slip-in cushion replacement soles; (3) he has not received the cortisone injections for his tennis elbow injury he was prescribed approximately one year ago; (4) he already underwent the six-month attempt at an alternate lifestyle required by BOP for Ozempic and was, in fact, prescribed Ozempic at FCI Otisville; and (5) BOP has delayed the surgical consultation with an orthopedic spine specialist for at least ten months now. (*Id.* at 3-4.)

**PROCEDURAL HISTORY**

This litigation has a complex procedural history. Petitioner commenced this action by filing a Complaint on September 12, 2023 asserting claims under the Federal Torts Claims Act ("FTCA") and Freedom of Information Act ("FOIA") and alleging that his rights were violated at FCI Otisville and FCI Gilmer. (ECF No. 1.) On November 27, 2023, Chief U.S. District Judge Laura Swain transferred Plaintiff's claims relating to conduct at FCI Gilmer to the United States District Court for the Northern District of West Virginia and transferred his FOIA claims to the United State District Court for the District of Columbia. (ECF No. 7.) Judge Swain granted Plaintiff leave to file an amended complaint as to claims relating to FCI Otisville. (*Id.*) On January 25, 2024, Plaintiff filed an amended complaint asserting FTCA claims and a petition seeking habeas relief

pursuant to 28 U.S.C. § 2241 because of alleged delay in his medical care. (ECF No. 8.) On June 10, 2024, Defendant moved to dismiss the petition. (ECF No. 31.) Plaintiff filed his reply on July 3, 2024. (ECF No. 42.)

Approximately six months after filing the amended complaint, on June 22, 2024, Plaintiff sought leave to file a second amended complaint (ECF No. 44), which was granted. (ECF No. 48). In his second amended complaint, Plaintiff reasserted the three negligence claims against the Government contained in the amended complaint and four additional claims: (1) ordinary negligence against Defendant Seven Corners, Inc. for delaying medical care for his sleep apnea and back injury, (2) ordinary negligence against the Government for failing to monitor Seven Corners' provision of medical services, (3) civil conspiracy against the Government and Seven Corners for conspiring to diminish the care provided to him, and (4) "unlawful agency action" against the Government for violating regulations and protocols regarding placing prisoners in handcuffs that injured his hands and wrists. (ECF No. 49 at 2–4.) All four of the new claims occurred while Plaintiff was incarcerated at FCI Otisville. (*Id.*) After the Government moved to dismiss the second amended complaint as against it (ECF No. 69), Plaintiff agreed to voluntarily withdraw several of his claims and this Court granted the Government's motion. (ECF No. 91 at 1.)

Then, on June 16, 2025, Plaintiff sought to supplement his second amended complaint to add three new defendants and six new claims, all of which allegedly arose after he filed his second amended complaint—the operative complaint. (ECF No. 103). On September 9, 2025, Magistrate Judge Reznik denied Plaintiff's motion for leave to supplement his second amended complaint. (ECF No. 127.)

On November 12, 2025, Plaintiff requested to transfer his habeas petition to the District Court for the District of Connecticut, and on November 18, 2025, this Court denied Plaintiff's request. (ECF No. 142.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "A party seeking a preliminary injunction must demonstrate: (1) 'a likelihood of success on the merits or…sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor'; (2) a likelihood of 'irreparable injury in the absence of an injunction'; (3) that 'the balance of hardships tips in the plaintiff's favor'; and (4) that the 'public interest would not be disserved' by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (quoting *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faively Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009); *see also Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faively*, 559 F.3d at 118 (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

With respect to the level of persuasion required to obtain a preliminary injunction, courts have distinguished between motions seeking prohibitory relief and those seeking mandatory relief. Where a party seeks a mandatory injunction "altering, rather than maintaining, the status quo," that party "must meet [a] more rigorous standard." *Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008) (internal alterations omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where... an injunction will alter, rather than maintain, the status quo."). The moving party must establish a "'clear' or 'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of injunctive relief. *Tom Doherty Assocs., Inc.*, 60 F.3d at 34.

**DISCUSSION**

Plaintiff asks this Court to order "the medical staff at FCI Danbury" to: (1) schedule surgery for a back injury; (2) provide certain follow-up care for his sleep apnea; (3) provide orthotic insole replacements for his foot pain; (4) administer cortisone injections for his lateral epicondylitis (tennis elbow); and (5) prescribe Ozempic to treat his obesity. (Pl. Mot. at 8.)

Plaintiff commenced this action while incarcerated at FCI Otisville, a correctional facility within this District. He has since been transferred to FCI Danbury, a correctional facility in Connecticut, and now seeks an order directing the medical staff at that institution to provide the requested treatment. As a threshold matter, the Court cannot grant the injunctive relief Plaintiff seeks because the requested relief is directed at individuals who are not parties to this action. Plaintiff asks the Court to order "the medical staff at FCI Danbury" to provide specified medical treatment. However, those individuals are not defendants in this case, and the Court lacks authority to issue an injunction compelling non-parties to act. *See* Fed. R. Civ. P. 65(a)(1) and (d)(2). Nor

has Plaintiff sought injunctive relief against any defendant over whom the Court could properly exercise jurisdiction with respect to the requested medical care at FCI Danbury. Accordingly, because the requested injunction is directed at nonparties rather than defendants properly before the Court and seeks to compel action by individuals over whom the Court lacks jurisdiction in this action, Plaintiff's motion for injunctive relief must be denied without reaching the merits of his request.

Plaintiff correctly notes that, on November 18, 2025, the Court denied his request to transfer the underlying habeas petition to the District of Connecticut and retained jurisdiction over this action. (ECF No. 142.) That ruling, however, does not alter the disposition of the instant Motion. It is well established that "a district court maintains jurisdiction of a habeas action, even when a petitioner is transferred to a completely different district, so long as jurisdiction was initially correct when the case was commenced." *Lopez v. Warden, FCI Ray Brook*, No. 9:24-CV-1057 (BKS), 2025 WL 2614506, at *3 (N.D.N.Y. Sept. 10, 2025); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *Mason v. Alatary*, No. 9:23-CV-0193 (GLS), 2023 WL 2965619, at *3 (N.D.N.Y. Apr. 17, 2023) (collecting cases); *Boone v. Menifee*, 387 F. Supp. 2d 338, 344 (S.D.N.Y. 2005), *report and recommendation adopted*, No. 03 Civ. 2593 (RMB) (FM), 2005 WL 2234031 (S.D.N.Y. Sept. 13, 2005) ("It is settled law that the Bureau of Prisons cannot deprive a federal court of jurisdiction to hear a habeas petition by transferring an inmate to another facility after his petition is filed.").

Thus, although this Court properly retains jurisdiction over Plaintiff's underlying habeas petition notwithstanding his transfer to FCI Danbury, that continuing jurisdiction does not authorize the Court to issue injunctive relief directing medical personnel at FCI Danbury to provide Plaintiff with specific medical treatment. Accordingly, Plaintiff's Motion is denied, and the Court need not reach its merits.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for preliminary injunction is DENIED.

To the extent Plaintiff exclusively seeks relief for his current medical ailments, Plaintiff's remedy is to voluntarily discontinue this action without prejudice to renew in the District Court of Connecticut.

The Court respectfully directs the Clerk of Court to (1) terminate the motion at ECF No. 151; and (2) mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

SO ORDERED.

Dated: July 13, 2026
White Plains, New York

Hon. Nelson S. Román
U.S. District Court Judge, S.D.N.Y.